**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| PLAINTIFF, | : | CRIMINAL ACTION NO. |
| | : | 08-cr-004 (JCH) |
| v. | : | |
| | : | |
| WILLIAM BALDWIN | : | |
| DEFENDANT. | : | MARCH 13, 2009 |
| | : | |

**RULING RE: DEFENDANT'S MOTION TO SET ASIDE THE VERDICT UNDER FED.**
**R. CRIM. P. 33 AND RENEWED MOTION FOR JUDGMENT OF ACQUITTAL UNDER**
**FED. R. CRIM. P. 29(b) (DOC. NO. 698)**

**I.      INTRODUCTION**

On December 12, 2008, a jury found defendant, William Baldwin, guilty of Count

One of a superceding indictment, charging him with conspiracy to possess with intent to

distribute, and to distribute, fifty grams or more of cocaine base, in violation of Title 21,

United States Code, Sections 841(a)(1) and 841(b)(1)(A)(iii).  Baldwin is incarcerated

and awaiting sentencing.  He now moves the court to set aside the jury verdict pursuant

to Fed. R. Crim. P. 33 and for judgment of acquittal pursuant to Fed. R. Crim. P. 29(c).

For the following reasons, the court denies Baldwin's Motion.

**II.     FACTS**

The superceding indictment charged Baldwin and sixteen others with various

offenses.  Baldwin was charged with one count of conspiring with Mauriel Glover, the

leader of the drug conspiracy, and others, to possess with intent to distribute fifty grams

or more of cocaine base ("crack").  Baldwin, who was tried with another defendant,

Carnel Sylvester Edwards, was convicted by a jury of this charge.

At trial, the government presented evidence regarding the conspiracy led by Mauriel Glover to distribute cocaine in the Newhallville section of New Haven, Connecticut.  The evidence concerning Baldwin adduced at trial consisted of: (1) recordings of 16 intercepted telephone calls between Baldwin and Mauriel Glover that occurred over a two month period; (2) testimony from cooperating witnesses Holly and Dockery; (3) testimony of Officer Brian Pazsak describing surveillance he conducted of Baldwin; (4) Baldwin acknowledging that the phone on the intercepted calls is the phone he uses; (5) testimony of Officer Craig Casman who, subsequent to Baldwin's arrest, found more than 5 grams of crack, and packing material used for redistribution on Baldwin; and (6) an admission from Baldwin when he was arrested that he got those drugs from Glover during the time of the conspiracy.

Members of the Glover conspiracy testified that, when making orders for drugs, buyers and resellers would often used code.  Pursuant to this code, a "Monday" meant one eight-ball of crack cocaine which is the equivalent of one eighth of an ounce of crack, "Tuesday" meant two eight-balls, "Wednesday" meant three eight-balls, and "Thursday" meant four eight-balls.  The government offered many intercepted calls between Glover and other members of the conspiracy in which these codes were used.

At the end of the government's case, the court made a Bourjaily finding that the government proved by a preponderance that Baldwin was a member of the Glover conspiracy.  Bourjaily v. United States, 483 U.S. 171 (1987); United States v. Geaney, 417 F.2d 1116 (2d Cir. 1969).  With respect to his co-defendant, Edwards, the court ruled that the government did not prove by a preponderance of the evidence that he

2

was a member of the conspiracy and thus, instructed the jury that it could only consider the calls between Mauriel Glover and other conspirators in the case against Baldwin, and not against his co-defendant, Edwards.  Following this ruling, Baldwin and Edwards each moved for a judgment of acquittal pursuant to Rule 29.  The district court reserved on both motions, pursuant to Rule 29(b) and allowed the case to go to the jury.  The jury returned a verdict of guilty against Baldwin and acquitted Edwards.  Baldwin now moves this court, pursuant to Rule 29(c), to set aside the jury's verdict and enter a judgment of acquittal, or in the alternative, moves for a new trial pursuant to Rule 33(a).

## II.    STANDARD OF REVIEW

### A.    Motion for Judgment of Acquittal

Rule 29(a) of the Federal Rules of Criminal Procedure provides that district courts "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction."  Fed. R. Crim. P. 29(a).  Rules 29(b) and (c) allow a court to reserve the decision on the motion until after the jury returns a verdict.  "A defendant challenging the sufficiency of the evidence that was the basis of his conviction at trial bears a 'heavy burden.'"  United States v. Hawkins, 547 F.3d 66, 70 (2d Cir. 2008) (quoting United States v. Parkes, 497 F.3d 220, 225 (2d Cir. 2007)).  In deciding whether to grant a motion pursuant to Rule 29, the court should "view the evidence in the light most favorable to the government, drawing all inferences in the government's favor and deferring to the jury's assessments of the witnesses' credibility."  Hawkins, 547 F.3d at 70.  A jury verdict shall be sustained "so long as any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Id. (quoting Parkes, 497 F.3d at 225-6) (internal quotation marks

3

omitted).   "[I]f the evidence viewed in the light most favorable to the prosecution gives

equal or nearly equal circumstantial support to a theory of guilt and a theory of

innocence, then a reasonable jury must necessarily entertain a reasonable doubt."

United States v. Glenn, 312 F.3d 58, 70 (2d Cir. 2002) (internal quotation marks

omitted).

      B.      Motion to Set Aside the Verdict/For a New Trial

      In the alternative, Baldwin seeks that a new trial be ordered pursuant to Rule 33

of the Federal Rules of Criminal Procedure.   Rule 33(a) allows a court to vacate "any

judgment and grant a new trial if the interest of justice so requires."   The rule gives the

trial court "broad discretion . . . to set aside a jury verdict and order a new trial to avert a

perceived miscarriage of justice."   United States v. Ferguson, 246 F.3d 129, 133 (2d

Cir. 2001) (internal citation omitted).   The district court, when examining the entire case,

must make an objective evaluation of the evidence and determine whether "'competent,

satisfactory and sufficient evidence' in the trial record" supports the jury's verdict.   Id.

Unlike in a Rule 29 motion, where the court must draw every inference in favor of the

government, in a Rule 33 motion the court is entitled to "weigh the evidence and in

doing so evaluate for itself the credibility of the witnesses."   United States v. Robinson,

430 F.3d 537, 543 (2d Cir. 2005) (quoting United States v. Sanchez, 969 F.2d 1409,

1413 (2d Cir. 1992)).   However, it may not "wholly usurp the jury's role."   Id.   Although a

trial court has substantially more discretion to grant a new trial under Rule 33 than it

does to grant a motion for acquittal under Rule 29, the authority should be exercised

"sparingly" and only in "the most extraordinary circumstances."   Sanchez, 969 F.2d at

1414.   "The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand

would be a manifest injustice." <u>Ferguson</u>, 246 F.3d at 133.  A manifest injustice is found where the court has "a real concern that an innocent person may have been convicted." <u>Parkes</u>, 497 F.3d at 232.

## III.   DISCUSSION

### A.   Motion for Judgment of Acquittal

Baldwin argues that the jury verdict should be set aside because there was not enough evidence to prove that he was part of the conspiracy.  He also contends that all the government was able to prove was that Baldwin bought drugs from Glover, not that he conspired with Glover to sell them.  He argues that a mere buyer-seller relationship is not enough to sustain a conspiracy conviction.  The court finds that the evidence presented at trial was sufficient for a reasonable jury to conclude that Baldwin was guilty of conspiracy to possess with intent to distribute, and to distribute, fifty grams or more of cocaine base.

With respect to Baldwin's first point, Baldwin argues that the statements of the alleged coconspirators were admitted in error because they lacked the necessary corroboration.  Out of court statements made by someone other than the declarant that are offered against a defendant are hearsay.  However, a statement is not hearsay if it is made by a "coconspirator of a party during the course and in furtherance of the conspiracy."  Fed. R. Evid. 801(d).  This exception "requires that the district court find by a preponderance of the evidence that (1) a conspiracy existed, (2) that it included the defendant and the declarant, and (3) that the statement was made during the course of and in furtherance of the conspiracy." <u>United States v. Padilla</u>, 203 F.3d 156, 161 (2d Cir. 2000).  The Second Circuit permits the government to conditionally admit

the statements into evidence.  At the end of the government's case, the court must determine whether the government has shown by a preponderance of the evidence that the otherwise hearsay statements are admissible against the defendant.  Geaney, 417 F.2d at 1120.  In making this Bourjaily finding, the court can consider the hearsay evidence sought to be admitted, 483 U.S. at 181, but there must be some independent corroborative evidence.[1]  United States v. Tellier, 831 F.3d 578, 580 (2d Cir. 1996).  If the court determines that the requirements have been met by a preponderance of the evidence, then the statements are allowed to go to the jury.  If the court is not so persuaded, it must instruct the jury to disregard the statements, or should declare a mistrial if it finds that the inadmissible statements were "so large a portion of the proof as to render a cautionary instruction of doubtful utility."  Geaney, 417 F.2d at 1120.

Baldwin argues that the court erred when, in making its Bourjaily finding, it found that there was corroborative evidence with respect to the statements offered against him to show that Baldwin was a member of the Glover conspiracy.[2]  Mem. in Supp. at 9. When the court issued its Bourjaily finding, it laid out the various evidence it found corroborating Baldwin's participation in the conspiracy.  See Tr. at 578/6-580/19.  With respect to the corroboration, it referenced the 13 intercepted calls[3] between Glover and Baldwin.  It also referenced the fact that, in one of those calls, Baldwin asked Glover for

---

[1] The Supreme court left the issue of independent corroboration open in Bourjaily v. United States, 483 U.S. 171, 181 (1987).

[2] Baldwin does not challenge the fact that a conspiracy existed.

[3] Though there were 16 total intercepted calls, three of them referred to locations and comings and goings, rather than anything substantive, so only 13 of the calls were of particular use to the court in its consideration.

a "Thursday," which was code for four eight-balls.  See Exh. TT-48.  This code was

established through independent corroboration through the testimony of a cooperating

witness at trial.  The fact that Baldwin was aware of the code is evidence that he was

aware of, and a part of, the conspiracy.  Furthermore, in the same call, there was

evidence that there was "fronting" between Baldwin and Glover.[4]  "Fronting," which is

the practice of giving drugs on credit, supports the fact that Baldwin was part of the

conspiracy.  A credit relationship demonstrates mutual trust, and "often evidences the

parties' mutual stake in each other's transactions."  Hawkins, 547 F.3d at 76 (quoting

---

[4] In the call, Glover indicates that Baldwin owes him for the "one-four."

Glover states : Uh, you wouldn't have that right now would you?
Baldwin: Huh?
Glover: Would you have that right now?
Baldwin: You said would I?
Glover: Yeah
Baldwin: Yeah, why wouldn't I?
Glover: You in the P.J.'s?
Baldwin: Yeah
Glover: I'm gonna swing by.
Baldwin: Alright.
Glover: Then when I get back after that, I'll take care of you. Know what I mean?
Baldwin: Alright
Glover: Alright Big Boy
Baldwin: Hey Yo!
Glover: Yeah
Baldwin: Hey yo, um, what it was . . . it was for that um . . .seven right?
Glover: Oh, oh you gave me the seven already, uh, from the one, the, the one four. You know what I mean? This other thing . . .D. . . You know what I mean right?
Baldwin: Yeah, hold on, I'm trying to, you know what I mean?  You said Thursday?
Glover: Na, um, are you in the projects right now? I want to talk to you in person.  Are you in the projects right now?
Baldwin: Yeah I am over here right now.
Glover: I'm about to come out there right now.
Baldwin: Alright, no doubt. See Exh. TT-48.

The government contends that "one-four" refers to fourteen grams of crack (or four eight-balls).  However, the call does indicate that Glover said he owed him for the one-four and Baldwin responded "you said Thursday."  Thursday, as the evidence showed, is code for four eight-balls.  It can be inferred from this conversation that Baldwin owed Glover for four eight-balls.

Gibbs, 190 F.3d 188 (3d Cir. 1999)).  Additional corroborating evidence includes the drugs found, along with materials used for repackaging, on Baldwin when he was arrested.  There is also Baldwin's statement that he got those drugs from Glover.[5]  All of this, is not only enough evidence to support the Bourjaily finding made by the court, but it is also sufficient for a rational jury to find beyond a reasonable doubt that Baldwin was a member of the Glover conspiracy.

Baldwin also argues that all the government proved was that Baldwin and Glover had a buyer-sell relationship and that Baldwin bought the drugs for his own personal use.  It is true that, without more, the buyer-seller relationship is insufficient to establish a conspiracy.  United States v. Parker, 554 F.3d 230, 234 (2d Cir. 2009) (quoting United States v. Gore, 154 F.3d 34, 40 (2d Cir. 1998)).  "Notwithstanding that a seller and a buyer agree together that they will cooperate to accomplish an illegal transfer of drugs, the objective to transfer the drugs from the seller to the buyer cannot serve as the basis for a charge of conspiracy to transfer drugs."  Id.  This buyer-seller exception "protects a buyer or transferee from the severe liabilities intended only for transferors."  Id. at *11.

In Hawkins, the Second Circuit reversed a judgment of acquittal that was entered by the district court on the basis that the government had only established a buyer-

---

[5] Baldwin argues that his arrest took place a month after the termination of the alleged conspiracy; thus, it cannot be linked to the conspiracy.  Mem. in Supp. at 7 n.1.  He further argues that the baggies found may have been evidence of repackaging for resale, but also could support the theory that they were for Baldwin's personal use.  Id.  First, with respect to the temporal connection, the court found that the drugs found on Baldwin relate back to the time of the Glover conspiracy.  In other words, he could have been in possession of those drugs for a month.  With respect to the baggies, there is no evidence in the record, that the court is aware of, suggesting that baggies are evidence of personal use.  However, there was testimony that the baggies found on Baldwin are often used to repackage and sell crack cocaine.  See, e.g., Tr. 482/11-15 (Testimony of Officer Casman).  Indeed, when seized, the baggies contained crack cocaine.  Tr. 487/21-488/5 (Officer Casman stating that the "majority" of the baggies had crack cocaine in them.)

seller relationship rather than participation in the alleged conspiracy.  547 F.3d 66.

More recently in Parker, the Second Circuit affirmed the convictions of the appellants

who argued the buyer-seller exception should have applied to them.  While recognizing

that determining whether the buyer seller relationship amounted to a conspiracy is a

"highly fact-specific inquiry," Hawkins, 547 F.3d at 74, the Second Circuit in Hawkins

and Parker highlighted certain factors to consider.  Id.  These factors include, "whether

there was prolonged cooperation between the parties, a level of mutual trust,

standardized dealings, sales on credit ('fronting'), and the quantity of drugs involved."

Id.

　　　All of these factors are present in Baldwin's case.  First, the 16 calls offered by

the government involving Baldwin and Glover spanned from September 27, 2007, until

November 11, 2007.  The jury could consider this "prolonged cooperation" between the

parties.  Second, as previously stated, there is evidence of mutual trust between

Baldwin and Glover, as a result of the drugs on credit, which evidences both parties'

knowledge and involvement in the conspiracy.  Hawkins, 547 F.3d at 76.  Further, using

code language, e.g., "Thursday", and saying things such as "the usual", see Exh. TT-45

and 47, and 'the uzh", see Exh. TT-50, indicate that Baldwin and Glover engaged in

"standardized dealings."  Hawkins, 547 F.3d at 74.  Additionally, the government offered

phone calls between Baldwin and Glover that took place after Baldwin was arrested.  In

one of these calls, Baldwin and Glover discussed the stop and the fact that no

contraband was found.  Exh. TT-40. (Baldwin stating "I didn't get caught with nothin.").

With respect to the quantity of drugs between Baldwin and Glover, there is no direct

evidence of the exact amount.  However, there is evidence in the record that Baldwin,

at one time, had four eight balls ("Thursday") and 5 grams of crack was found on him when he was arrested.  That evidence, combined with the number of calls between he and Glover, permitted the jury to infer that a substantial amount of crack, indeed 50 grams or more, was exchanged between them.  All of this evidence, viewed in the light most favorable to the government, is sufficient to show that Baldwin was a member of the conspiracy, and not just a buyer of the crack cocaine.

For the foregoing reasons, the court finds that Baldwin did not meet his burden of establishing that there was insufficient evidence to sustain his conviction.  The court, thus, denies Baldwin's Renewed Motion for Acquittal.

B.    Motion to Set Aside the Verdict/For a New Trial

Although the court has more discretion to grant a Rule 33 motion, the court finds that there are no "extraordinary circumstances," Ferguson, 246 F.3d at 133, present in this case to warrant setting aside the jury's verdict and ordering a new trial.  In examining the entire case, as it did in ruling on the Rule 29 motion, the court finds that there is sufficient evidence in the trial record to support the jury's verdict and that the jury's verdict did not result in a "manifest injustice."  Therefore, the court denies Baldwin's Motion to Set Aside the Verdict.

IV.    **CONCLUSION**

For the foregoing reasons, Baldwin's Motion to Set Aside the Verdict/For a New Trial under Fed. Crim. P. 33 and Renewed Motion for Judgment of Acquittal under Fed. R. Crim. P. 29(b) (Doc. No. 698) is **DENIED**.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 13th day of March, 2009.


                                          /s/ Janet C. Hall
                                          Janet C. Hall
                                          United States District Judge